IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| OmegaGenesis Corporation,<br><br>   Plaintiff,<br><br>v.<br><br>Mayo Foundation for Medical Education and Research,<br><br>   Defendant. | Case No.: _____<br><br>**COMPLAINT**<br>**JURY TRIAL DEMANDED** |

Plaintiff, for its Complaint against Defendant, states and alleges as follows:

## INTRODUCTION

1. Plaintiff was formed to continue to develop and market certain medical technology allegedly developed by Defendant. In fact, Defendant's employees had done very little to develop the allegedly proprietary material and instead sold Plaintiff on technology that had previously been developed elsewhere – at an institution where one of Defendant's employees had previously worked. The failure to deliver original work product foreclosed the opportunity to obtain patents and an entity that had obtained a valuation of $28 million became virtually worthless.

## PARTIES AND JURISDICTION

2. Plaintiff OmegaGenesis ("OmegaGenesis") is a Delaware corporation with its principal place of business in California.

3. Defendant Mayo Foundation for Medical Education and Research is a Minnesota charitable corporation with its principal place of business in Minnesota.

4. The amount in controversy exceeds $75,000.

## FACTUAL BACKGROUND

5. OmegaGenesis was specifically formed in response to several overtures from representatives of Defendant. The person who became the CEO of OmegaGenesis had substantial experience and contacts with medical technology and venture capital.

6. Representatives of Defendant represented that Defendant had developed and were in the process of patenting certain technology related to angiogenesis, which is the creation of blood vessels. Those representatives also indicated that Defendant needed assistance in order to commercialize the invention.

7. During the negotiations and again during presentations to potential investors, Defendant's employees claimed to have spent substantial time developing the technology.

8. Five of Defendant's employees are listed on the preliminary patent application filed by Defendant, and the submission of a patent application is a representation of original invention.

9. OmegaGenesis requested inventor's notebooks, test results, and other information for purposes of due diligence. Defendant refused to produce anything based on a claim of confidentiality. Defendant assured Plaintiff, however, of the legitimacy of its development of the technology.

10. The parties ultimately executed an exclusive patent license agreement ("License Agreement") pursuant to which OmegaGenesis would develop the technology. As part of the License Agreement, Defendant represented that it was the owner of the technology which was the subject of pending patent applications and that the "know-how" being conveyed was that which had been "developed in the laboratory of Dr. Debabrata Mukhopadhyay or any person working under his direction or control."

11. Plaintiff then held an investor conference to raise money for the commercialization of the project. During that meeting, Defendants' employees, Drs. Debabrata Mukhopadhyay and Chittaranjan Patra, presented their claimed discovery and patents.

12. Plaintiff raised $500,000.00. Pursuant to the License Agreement, Defendant was then entitled to a percentage of the ownership.

13. After the License Agreement was executed, Defendant still failed to provide documents substantiating the work allegedly done by Defendant. In addition, Defendant refused to assist OmegaGenesis in prosecuting the patents.

14. Ultimately, the patent was denied due to the existence of prior art. The prior art revealed that the exact same invention had already been developed at Bar Ilan University in Israel.

15. Not coincidentally, one of Defendant's claimed inventors, Chittaranjan Patra, was a graduate assistant at the Bar Ilan University at the time of the development of the prior art. Furthermore, like Patra, one of the graduate assistants working on the

project at Bar Ilan was also a student from India. At a minimum, Patra had to have known of the Bar Ilan prior art.

16.     Defendant either failed to actually do any work and just relied on the prior art or merely mimicked the prior work.

17.     The License Agreement states that Defendant did not represent that the technology would be patentable, but Defendant, or at least its employee, knew or should have known that it could not be patented.

18.     Furthermore, the representations that Defendant had developed anything were untrue.  Defendant has failed to produce adequate inventor notebooks or other evidence that would support its claim of inventing the process that is the basis for the License Agreement.  The documents identified as the inventor's notebook are largely illegible, unsigned by inventors, frequently undated, not sequential, and not witnessed.

19.     OmegaGenesis no longer operates and exists as a shell.

## COUNT ONE – FRAUD

20.     Plaintiff realleges and incorporates by reference the previous allegations as though fully set forth herein.

21.     Defendant made representations of fact regarding the development of the technology that was the subject of the License Agreement.

22.     Those representations included:

    a. Contact was initially made by email from Debashish Bhattacharya, who is Debrabrata Mukhopadhyay's cousin.  He claimed in an email dated

-4-

2/20/2008 that the nanotechnology venture was the brainchild of Mukhopadhyay.

b. On March 4, 2008, Mukhopadhyay sent an email containing "highlights of our research work" and the patent application itself. The patent application represents that the claimed inventors are, in fact, the inventors and do not know of any prior art that would change that conclusion.

c. A meeting was held at Mayo on June 5-6, 2008. Defendant presented their "discovery" and patent filing. During the meeting, Mayo introduced four lab staff members that were represented as the discoverers of the nanoparticle angiogenesis effect. Chittaranjan Patra was introduced as the lead person. Dr. Patra is the person who was at Bar-Ilan in Israel when the discovery was actually made.

d. An investor's conference was held on October 14, 2008. Mukhopadhyay and Patra presented their work, which they represented as their discovery and research.

e. The same representations were made at various other times through telephone calls that were part of the negotiations and due diligence.

23. The representations were false in that Defendant had not developed the technology and in that to the extent Defendant did any work it was not the original inventor.

24. Defendant, through at least one of its employees, knew about the prior art and invention.

25. Plaintiff reasonably relied on the representations of Defendant.

26. Plaintiff has suffered damages as a result of its reasonable reliance.

## COUNT TWO – NEGLIGENT MISREPRESENTATION

27. Plaintiff realleges and incorporates by reference the previous allegations as though fully set forth herein.

28. Defendant made representations of fact knowing that, and intending that, Plaintiff would rely on them in connection with the decision to enter into the License Agreement and spend money performing under it.

29. Those representations were false.

30. Plaintiff reasonably relied on those representations.

31. Plaintiff has suffered damages as a result of its reasonable reliance on Defendant's representations.

## COUNT THREE – BREACH OF CONTRACT

32. Plaintiff realleges and incorporates by reference the previous allegations as though fully set forth herein.

33. The parties entered into a contract pursuant to which Defendant agreed to convey rights and know-how that it had developed.

34. In fact, it had no rights and had not actually developed the technology and, as a result, its failure to deliver technology that it owned constituted a breach of contract.

35. Furthermore, Defendant expressly agreed to cooperate with Plaintiff with respect to obtaining patents.

36. Defendant repeatedly failed to cooperate with Plaintiff's attempts to patent the alleged invention that it had licensed from Defendant.

37. Plaintiff has performed all of its obligations under the License Agreement.

38. Plaintiff has suffered damages as a result of Defendant's breach of contract.

### COUNT FOUR – BREACH OF IMPLIED COVENANT OF GOOD FAITH

39. Plaintiff realleges and incorporates by reference the previous allegations as though fully set forth herein.

40. Every contract has an implied covenant of good faith and fair dealing that requires the parties not do anything to frustrate the performance of the contract.

41. Defendant breached the implied covenant of good faith and fair dealing by failing to assist in obtaining patents and otherwise bringing the product to market.

42. Plaintiff has suffered damages as a result of Defendant's breach.

WHEREFORE, Plaintiff requests judgment as follows:

1. A monetary judgment in an amount to be proven at trial.

2. An award of costs, disbursements, prejudgment interest, and attorneys' fees to the extent allowed by law.

3. Such other and further relief as the Court deems appropriate.

**GUST LAW FIRM, PLLC**

Dated: June 1, 2015

s/Robert A. Gust
Robert Gust (0158847)
222 S. 9th St.
Suite 1600
Minneapolis, MN 55402
Telephone: 612.337.9580
bgust@gustlawfirm.com

-8-

                                                              **SRL LAW, PLLC**

Dated: June 1, 2015                            s/Steven R. Little
                                                              Steven R. Little (0304244)
                                                               222 S. 9th St.
                                                               Suite 1600
                                                               Minneapolis, MN   55402
                                                               Telephone 612.337.9535
                                                               slittle@srllaw.com