UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 15-2595(DSD/HB)

OmegaGenesis Corporation,

        Plaintiff,

v.                                                            **ORDER**

Mayo Foundation for Medical
Education and Research,

        Defendant.

    Robert A. Gust, Esq., Gust Law Firm, PLLC, 222 South Ninth
    Street, Suite 1600, Minneapolis, MN 55402, counsel for
    plaintiff.

    Gregory E. Karpenko, Esq., Fredrikson & Byron, PA, 200 South
    Sixth Street, Suite 4000, Minneapolis, MN 55402, counsel for
    defendant.

This matter is before the court upon the motion to dismiss by defendant Mayo Foundation for Medical Education and Research. Based on a review of the file, record, and proceedings herein, and for the following reasons, the court grants the motion.

**BACKGROUND**

This dispute arises out of a contract between Mayo and plaintiff OmegaGenesis Corporation. Mayo is a charitable Minnesota corporation that, in part, researches and develops medical technology. See Compl. ¶¶ 3, 6. OmegaGenesis is a business that was specifically formed in response to Mayo's request to help commercialize a medical invention. Id. ¶¶ 2, 5-6. Oostur Raza,

co-founder and CEO of OmegaGenesis, had substantial experience with medical technology and venture capital. See id. ¶ 5.

Mayo filed a patent application in August 2007, for nano rod technology related to the creation of blood vessels, a process known as angiogenesis. Id. ¶ 6; Karpenko Decl. Ex. A § 1.12. On September 24, 2008, the parties entered into an exclusive license agreement (License Agreement). Compl. ¶ 10; Karpenko Decl. Ex. A. § 2.01. Under the License Agreement, Mayo gave OmegaGenesis the right to prosecute the still-pending patent application, develop the product, and bring the product to market. Compl. ¶ 10; Karpenko Decl. Ex. A. §§ 1.09, 1.12, 5.01, 6.01. Mayo also had a continuing duty to "cooperate with [OmegaGenesis] in such efforts as reasonably requested by [OmegaGenesis]." Karpenko Decl. Ex. A. § 6.01.

Pursuant to the License Agreement, Mayo did not receive any upfront monetary consideration from OmegaGenesis. Rather, Mayo received stock in OmegaGenesis and could earn royalties on any sales and sublicenses. Compl. ¶ 12; Karpenko Decl. Ex. A. §§ 3.01, 3.02, 3.03. Mayo's return on the License Agreement was effectively tied to OmegaGenesis' success.

The License Agreement contains several provisions regarding representations, warranties, and disclaimers. First, there is a general disclaimer and integration clause. Karpenko Decl. Ex. A § 11.08. There is also a general disclaimer regarding

2

merchantability and fitness for a particular purpose. Id.
§ 9.03(a). In contrast, OmegaGenesis specifically warranted and
represented that it

> has independently evaluated the Patent Rights,
> Know-How and Confidential information, if any,
> their applicability or utility in Company's
> activities, is entering into this Agreement on
> the basis of its own evaluation and not in
> reliance on any representation by Mayo, and,
> except as set forth in this Agreement, assumes
> all risk and liability in connection with such
> determination.

Id. § 9.01(b). Related to this warranty and representation by
OmegaGenesis, a specific disclaimer provides:

> EXCEPT AS EXPLICITLY SET FORTH IN THIS
> AGREEMENT, THE KNOW-HOW, CONFIDENTIAL
> INFORMATION AND PATENT RIGHTS ARE PROVIDED "AS
> IS," "WITH ALL FAULTS," AND "WITH ALL
> DEFECTS," AND [OmegaGenesis] EXPRESSLY WAIVES
> ALL RIGHTS TO MAKE ANY CLAIM WHATSOEVER
> AGAINST MAYO FOR BREACH OF IMPLIED
> REPRESENTATION OR WARRANTY. MAYO EXPRESSLY
> DISCLAIMS ANY IMPLIED WARRANTIES ARISING FROM
> ANY COURSE OF DEALING, USAGE, OR TRADE
> PRACTICE, WITH RESPECT TO: THE SCOPE,
> VALIDITY OR ENFORCEABILITY OF THE PATENT
> RIGHTS OR KNOW-HOW; THAT ANY PATENT WILL ISSUE
> BASED UPON ANY OF PENDING PATENT APPLICATION;
> OR THAT THE MANUFACTURE, USE, SALE, OFFER FOR
> SALE OR IMPORTATION OF THE LICENSED PRODUCTS
> WILL NOT INFRINGE OTHER INTELLECTUAL PROPERTY
> RIGHTS.

Id. § 9.03(b).

Before signing the License Agreement, Mayo refused to produce
any inventor's notebooks or test results based on a claim of
confidentiality. Compl. ¶ 9. After signing the License Agreement,

OmegaGenesis alleges that Mayo "still failed to provide documents substantiating the work allegedly done" by Mayo.  Id. ¶ 13. However, OmegaGenesis also alleges that Mayo provided "documents identified as the inventor's notebook" but that these were "largely illegible, unsigned by inventors, frequently undated, not sequential, and not witnessed." Id. ¶ 18.

Ultimately, the patent application was denied due to the existence of prior art. Id. ¶ 14.  The same invention had already been developed at a university where one of Mayo's claimed inventors had worked as a graduate assistant.  Id. ¶¶ 14-15. OmegaGenesis alleges that, "[a]t a minimum, [one of Mayo's claimed inventors] had to have known of the [university's] prior art" and "that the technology ... could not be patented." Id. ¶¶ 15, 17. After the patent denial, OmegaGenesis ceased to operate and exists only as a shell corporation. Id. ¶ 19.

OmegaGenesis filed a complaint against Mayo on June 1, 2015, alleging claims for (1) fraud, (2) negligent misrepresentation, (3) breach of contract, and (4) breach of the implied covenant of good faith and fair dealing.  Mayo moves to dismiss.

## DISCUSSION

## I.   Standard of Review

To survive a motion to dismiss for failure to state a claim, "'a complaint must contain sufficient factual matter, accepted as

true, to state a claim to relief that is plausible on its face.'" Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff [has pleaded] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)). Although a complaint need not contain detailed factual allegations, it must raise a right to relief above the speculative level. Twombly, 550 U.S. at 555. "[L]abels and conclusions or a formulaic recitation of the elements of a cause of action" are not sufficient to state a claim. Iqbal, 556 U.S. at 678 (citation and internal quotation marks omitted).

The court does not consider matters outside the pleadings in deciding a motion to dismiss under Rule 12(b)(6). See Fed. R. Civ. P. 12(d). The court may consider materials "that are part of the public record," Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999), and matters "necessarily embraced by the pleadings and exhibits attached to the complaint." Mattes v. ABC Plastics, Inc., 323 F.3d 695, 698 n.4 (8th Cir. 2003). In the present action, the court considers the License Agreement signed by the parties with an effective date of September 24, 2008.

## II.  Fraud

Count 1 of the Complaint alleges that Mayo defrauded

OmegaGenesis by falsely representing the patentability and
independent development of the technology.  Mayo argues this claim
should be dismissed because OmegaGenesis specifically disclaimed
reliance on Mayo's representations in the License Agreement.

To state a claim for common law fraud under Minnesota law, a
plaintiff must prove:

> that (1) there was a false representation by a
> party of a past or existing material fact
> susceptible of knowledge; (2) made with
> knowledge of the falsity of the representation
> or made as of the party's own knowledge
> without knowing whether it was true or false;
> (3) with the intention to induce another to
> act in reliance thereon; (4) that the
> representation caused the other party to act
> in reliance thereon; and (5) that the party
> suffered pecuniary damage as a result of the
> reliance.

Stumm v. BAC Home Loans Servicing, L.P., 914 F. Supp. 2d 1009, 1013
(D. Minn. 2012) (citing Hoyt Props., Inc. v. Prod. Res. Grp.,
L.L.C., 736 N.W.2d 313, 318 (Minn. 2007)).

Minnesota law establishes a high standard that contractual
disclaimers must meet in order to be effective.  A general
disclaimer clause in a contract is ineffective under Minnesota law
to negate reliance on even innocent misrepresentations.  Clements
Auto Co. v. Serv. Bureau Corp., 444 F.2d 169, 178 (8th Cir. 1971).
"Minnesota decisions have generally given a very narrow
interpretation to warranty disclaimer provisions in contracts."
Id. at 177, n.6 (citing Dougall v. Brown Bay Boat Works and Sales,
Inc., 178 N.W.2d 217 (Minn. 1970); Beck v. Spindler, 99 N.W.2d 670

6

(Minn. 1959); McPeak v. Boker, 53 N.W.2d 130 (Minn. 1952); Bekkevold v. Potts, 216 N.W. 790 (Minn. 1927)).

However, a plaintiff cannot rely on a defendant's representations when the plaintiff's reliance directly contradicts a provision of a contract. Ellering v. Sellstate Realty Sys. Network, Inc., 801 F. Supp. 2d 834, 845 (D. Minn. 2011); see also Commercial Prop. Invs. v. Quality Inns Int'l, Inc., 938 F.2d 870, 875-76 (8th Cir. 1991) (noting that in Minnesota, reliance may be decided as a matter of law where it is based on assertions "in plain contradiction of a contract" and that "a contract provision negatives a claim of fraud ... where the provision explicitly states a fact completely antithetical to the claimed misrepresentations") (citation omitted).

The parties' contract includes both general and specific disclaimers. A general disclaimer and integration clause can be found in § 11.08 of the License Agreement. There is also a general disclaimer regarding merchantability and fitness for a particular purpose at § 9.03(a). By contrast, § 9.01(b) of the License Agreement states that OmegaGenesis "independently evaluated the Patent Rights, Know-How and Confidential Information," and "is entering into this Agreement on the basis of its own evaluation and not in reliance of any representation by Mayo." Further, § 9.03(b) of the License Agreement states that Mayo "EXPRESSLY DISCLAIMS ANY IMPLIED WARRANTIES ... WITH RESPECT TO:  THE SCOPE, VALIDITY OR

ENFORCEABILITY OF THE PATENT RIGHTS OR KNOW-HOW." The definition of "Know-How" under § 1.08 includes "research and development information" and "test descriptions, procedures, results and analyses." Thus, Mayo's representations of the patentability and the independent development of the technology are both specifically disclaimed in the License Agreement. These disclaimers meet the high standard established by Minnesota law. Accordingly, the court finds that Mayo's representations regarding patentability and independent development could not be relied upon by OmegaGenesis as a matter of law.

OmegaGenesis has failed to adequately allege reliance on Mayo's representations. As a result, the fraud claim fails as a matter of law and warrants dismissal.

## III. Negligent Misrepresentation

Count 2 of the Complaint alleges that Mayo negligently misrepresented the patentability and independent development of the technology. Mayo argues this claim should be dismissed because OmegaGenesis specifically disclaimed reliance on Mayo's representations in the License Agreement, which was the product of an arms-length transaction. Mayo further argues that Minnesota law provides that OmegaGenesis was required to perform its own due diligence and was owed no duty of care by Mayo. OmegaGenesis responds that the court should apply California law, which arguably does not bar negligent misrepresentation claims based on arms-

length transactions.  The court need not decide the choice-of-law issue because both states' laws require proof of reliance to support a negligent misrepresentation claim.

The elements of a negligent misrepresentation claim under Minnesota law are:

> (1) the supply of false information to another person in order to guide that person in his or her own business transactions; (2) failure to use reasonable care or competence in obtaining the information or communicating the information to the other person; (3) justifiable reliance by the other person on the information; and (4) financial harm as a result of that reliance.

Stumm, 914 F. Supp. 2d at 1015, n.3 (D. Minn. 2012)(citing Hardin Cty. Sav. Bank v. Housing & Redevelopment Auth., 821 N.W.2d 184, 191–93 (Minn. 2012).  The elements of a negligent misrepresentation claim under California law are:

> (1) The defendant must have made a representation as to a past or existing material fact, (2) which was untrue, (3) which, regardless of the defendant's actual belief, was made without any reasonable grounds for believing it was true, and (4) which was made with the intent to induce the plaintiff to rely upon it; (5) the plaintiff justifiably relied on the statement, and (6) plaintiff sustained damages.

Tenet Healthsystem Desert, Inc. v. Fortis Ins. Co., 520 F. Supp. 2d 1184, 1195 (C.D. Cal. 2007) (citing Cedars Sinai Med. Ctr. v. Mid-W. Nat'l Life Ins. Co., 118 F. Supp. 2d 1002, 1010 (C.D. Cal. 2000); Gagne v. Bertran, 275 P.2d 15, 20-21 (Cal. 1954)).  In California, a plaintiff will be denied recovery if his conduct was

manifestly unreasonable - in light of his own intelligence and information - in relying upon a misrepresentation.  Winn v. McCulloch Corp., 60 Cal. App. 3d 663, 671 (Ct. App. 1976) (citing Hefferan v. Freebairn, 34 Cal.2d 715, 719 (1950)); see also Girard v. Toyota Motor Sales, U.S.A., Inc., 316 F. App'x 561, 563 (9th Cir. 2008) (affirming the district court's dismissal of a negligent misrepresentation claim because a reasonable plaintiff could not rely on an alleged misrepresentation where the documents at issue included numerous disclaimers).

As discussed in the prior section, Mayo specifically disclaimed the patentability and independent development of the technology.  The CEO of OmegaGenesis had substantial experience with medical technology and venture capital.  OmegaGenesis was represented by reputable counsel when preparing and reviewing the License Agreement.  See Karpenko Decl. Ex. A. § 11.05.  Mayo's representations regarding patentability and independent development could not be justifiably relied upon by OmegaGenesis.

Under these circumstances, OmegaGenesis has failed to adequately allege reliance on Mayo's representations.  As a result, the negligent misrepresentation claim fails as a matter of law.

## IV. Breach of Contract

Count 3 of the Complaint alleges that Mayo breached the contract in two ways: Mayo did not fulfill its contractual obligation to convey the patent rights and know-how that it had

developed; and Mayo did not cooperate with OmegaGenesis' attempts to patent the invention.  OmegaGenesis argues that the claim for the first breach fails because the statute of limitations has expired, and that both breach claims fail because OmegaGenesis has no contractual damages given the formula provided in the License Agreement.

### A.    Statute of Limitations

Breach of contract claims are subject to a six-year statute of limitations.  Minn. Stat. § 541.05, subd. 1(1).  A cause of action for breach of contract accrues - and the statute of limitations begins to run - "at the time of the alleged breach."  Jacobson v. Bd. of Trustees of the Teachers Ret. Assn., 627 N.W.2d 106, 110 (Minn. Ct. App. 2001) (citing Pederson v. Am. Lutheran Church, 404 N.W.2d 887, 889 (Minn. Ct. App. 1987)).

The parties entered into the License Agreement on September 24, 2008. OmegaGenesis' Complaint alleges that Mayo "had no rights and had not actually developed the technology and, as a result, its failure to deliver technology that it owned constituted a breach of contract."  Compl. ¶ 34.  Essentially, OmegaGenesis alleges that Mayo could not convey and rights or know-how because it was not the original inventor and had not independently developed the technology.  Accordingly, Mayo's breach would have occurred, if at all, when the License Agreement was signed, i.e., when Mayo conveyed rights to OmegaGenesis that Mayo allegedly did not own.

11

Concomitant with the alleged breach, the statute of limitations began to run on September 24, 2008, and the claim was barred after September 24, 2014. OmegaGenesis filed its Complaint eight months later on June 1, 2015. As a result, OmegaGenesis' claim for breach of contract based on Mayo's failure to convey rights and know-how is barred by the statute of limitations.

   **B.  Damages**

   Mayo also argues that OmegaGenesis' breach of contract claims fail because OmegaGenesis has no contractual damages. To establish a claim for breach of contract, a plaintiff must show that it was damaged by the alleged breach. Forbes v. Wells Fargo Bank, N.A., 420 F. Supp. 2d 1018, 1021 (D. Minn. 2006) (citing Jensen v. Duluth Area YMCA, 688 N.W.2d 574, 579 (Minn. Ct. App. 2004)). "Under Minn. Stat. § 336.2-719(1), parties to a contract may limit or alter the measure of damages recoverable." Cargill, Inc. v. Products Eng'g Co., 627 F. Supp. 1492, 1497 (D. Minn. 1986); see also Soo Line R. Co. v. Fruehauf Corp., 547 F.2d 1365, 1370 (8th Cir. 1977).

   The License Agreement includes a damages-limitation formula. Specifically, Mayo's liability is limited to "THE TOTAL AMOUNT OF ROYALTIES WHICH HAVE ACTUALLY BEEN PAID TO MAYO BY [OmegaGenesis] AS OF THE DATE OF FILING OF AN ACTION AGAINST MAYO." Karpenko Decl. Ex. A § 9.03(c). The parties do not dispute that no royalties were ever paid to Mayo by OmegaGenesis. As a result,

12

OmegaGenesis has not suffered any damages under the damages-limitation formula to which it contracted. Therefore, OmegaGenesis' claims for breach of contract fail as a matter of law.

## V.   Breach of Implied Covenant of Good Faith and Fair Dealing

Count 4 of the Complaint alleges that Mayo breached its implied covenant of good faith and fair dealing by failing to assist in obtaining patents and otherwise bringing the product to market.  Mayo argues that this claim fails because OmegaGenesis has failed to establish damages or Mayo's ulterior motive to act in bad faith.

A claim for breach of the implied covenant of good faith and fair dealing is a contract-based claim.  In re Hennepin Cty. 1986 Recycling Bond Litig., 540 N.W.2d 494, 503 (Minn. 1995).  The covenant "does not extend to actions beyond the scope of the underlying contract." Id.  To establish a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must show that it was damaged by the alleged breach.  See Cox v. Mortgage Elec. Registration Sys., Inc., 685 F.3d 663, 670-71 (8th Cir. 2012) (dismissing plaintiff's claim for breach of the implied covenant of good faith and fair dealing because plaintiff failed to allege damages caused by defendant).

As discussed in the prior section, OmegaGenesis has not suffered any damages under the damages-limitation formula to which

13

it contracted.  Consequently, OmegaGenesis' claim for breach of the implied covenant of good faith fails as a matter of law and warrants dismissal.

Alternatively, OmegaGenesis' claim fails given its failure to allege that Mayo had an ulterior motive that would lead it to act in bad faith.  A party must establish bad faith by demonstrating that the adverse party has an ulterior motive for its refusal to perform a contractual duty.  Cox v. Mortgage Elec. Registration Sys., Inc., 794 F. Supp. 2d 1060, 1066 (D. Minn. 2011); Minnwest Bank Central v. Flagship Props., L.L.C., 689 N.W.2d 295, 303 (Minn. Ct. App. 2004); see also Sterling Capital Advisors, Inc. v. Herzog, 575 N.W.2d 121, 125 (Minn. Ct. App. 1998).

OmegaGenesis has not alleged an ulterior motive for Mayo's alleged failure to perform under the License Agreement.  In fact, in its response to the motion to dismiss, OmegaGenesis acknowledges that it "does not know why [Mayo] refused to assist."  Opp'n Mem. p. 13.  Mayo's sole sources of compensation under the License Agreement are its stock in OmegaGenesis and potential royalties on future sales of the product.  Mayo could only benefit if OmegaGenesis succeeded.  OmegaGenesis has not alleged an ulterior motive for Mayo to hinder OmegaGenesis' success.  Consequently, OmegaGenesis' claim for breach of the implied covenant of good faith fails as a matter of law.

14

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that the motion to dismiss [ECF No. 11] is granted.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated:  September 21, 2015

                                        s/David S. Doty
                                        David S. Doty, Judge
                                        United States District Court

15